Texas & Pacific Railway Company v. A. N. Kennedy.

Decided May 27, 1902.

**1.—Railway Company—Negligence of Trainmen Frightening Horse.**

Where plaintiff's horse was frightened by reason of the engineer of a passing train unnecessarily opening the cylinder cocks, causing the escape of steam with loud noise, the railway company was liable for the resultant injury, and it was not necessary to plaintiff's right of recovery that the engineer should have seen his actual peril, if a reasonably prudent person would have anticipated that the opening of the cylinder cocks would frighten the horse and probably cause plaintiff to be injured.

**2.—Same—Measure of Duty—Discovered Peril.**

The engineer's duty was not confined to shutting off the steam after he discovered that the unnecessary opening of the cylinder cocks had in fact frightened plaintiff's horse; and the doctrine of discovered peril, which is usually applied in cases where the injured party is guilty of some contributory negligence, has no application to the facts of this case.

Appeal from Gregg. Tried below before Hon. R. B. Levy.

*Duncan & Jones,* for appellant.

*Turner & McHaney, John B. Howard,* and *Young & Stinchcomb,* for appellee.

PLEASANTS, Associate Justice.—This is a suit for damages for personal injuries alleged to have been caused by the negligence of the appellant. On the evening of December 26, 1899, the appellee, while

riding along a public road near the town of Hallville, in Harrison County, was thrown from his horse and received the injuries complained of. The circumstances attending the accident and appellant's connection therewith may be succinctly stated as follows:

The road along which appellee was riding is upon appellant's right of way, and at the place of the accident was about twenty-five or thirty feet from the railway track. Appellant's track is fenced and the public road is not upon the inclosed portion of the right of way. From a point one-half mile west of Hallville the road runs in a westerly direction through a lane about twenty feet wide. This land is made by the right of way fence on the south and a farm fence on the north, and is three or four hundred yards long. Just after entering this lane going west there is a slight depression in the road. Appellee had just crossed this depression going west when he heard a freight train coming from the direction in which he was riding. He saw this train when it was 300 yards distant. When the train got within 150 yards of appellee the whistle on the locomotive was blown. When appellee first heard the train he was riding along reading a letter, and anticipating that his horse might become frightened, he put the letter in his pocket and prepared to dismount. As the horse appeared to pay no attention to the train, which was in full view, and was not frightened by the whistle, but indicated a desire to go on towards the approaching train, appellee concluded he would not dismount. It was down grade from the point at which appellee first saw the train to the town of Hallville. The train was running about twelve miles an hour. When the locomotive reached a point about thirty yards from appellee the engineer opened the cylinder cocks and the steam was thrown out on both sides of the engine, making a loud and unusual noise, which greatly frightened appellee's horse and caused him to immediately begin to rear and plunge. The locomotive continued to emit steam through the cylinder cocks and to make a loud noise until it had run some distance past the appellee. Appellee's horse continued to rear and plunge until it finally fell with him and he was seriously injured. The fireman on the engine saw plaintiff before the cylinder cocks were opened and saw him when the horse took fright and began to rear and plunge, and there was nothing to prevent his being seen by the engineer before the cocks were opened, though the latter testified that he did not see him. The cocks were opened by the engineer, the lever by which they were operated being upon the engineer's side of the engine, and being exclusively under his control. These cocks could have been closed, the steam shut off, and the noise stopped in a moment's time. No effort was made to stop the escape of steam and no attention was paid to appellee by any of the train crew, and the train was not stopped. It was not necessary in the proper operation of the train at that time and place to have opened the cylinder cocks. Appellee's horse was gentle and was not frightened by the usual noises made by a railway train.

We conclude from these facts that appellee's injuries were caused by

the negligence of the employes of appellant as alleged in the petition and that the appellee was not guilty of contributory negligence.

The trial in the court below by a jury resulted in a verdict and judgment in favor of appellee for the sum of $1750.

Appellant's first, second, and third assignments of error which are presented together in his brief are as follows:

"The court erred in its general charge to the jury in omitting to charge upon one of the main and material issues made in the case; that is to say, upon discovered peril; and in failing to instruct the jury as to the respective obligations and duties of the plaintiff and the employes of defendant in case the employes of defendant discovered the peril of plaintiff, both the pleadings and the proof showing that there was no obligation nor duty devolving upon the defendant's employes from the mere fact of said employes discovering plaintiff riding along a public highway near defendant's track; but such duties and obligations began and were imposed when and after plaintiff's peril, if any, became known to defendant's employes operating the train.

"The court erred in refusing to give defendant's special charge number 2 as follows: 'You are further charged that the law does not impose upon operatives of a railway train the duty of looking out for the safety of travelers along a highway near to and parallel with the track, and that the duty to such traveler only arises when the fright of the horse and the danger to the rider is discovered by them in time to avert the injury by resort to the means at hand; and in this case, if you believe from the testimony that the engineer was at his place in the performance of his duties, looking out ahead, and that he did not see nor discover the peril of plaintiff at all, and that such engineer was the employe on the train who was in charge of and operating the engine and its appurtenances, including the cylinder cocks as well as the appurtenances for starting and stopping the train, then you will find for the defendant.'

"The court erred in refusing to give defendant's special charge number 5 as follows: 'You are further charged that the right of way at the point where plaintiff claims to have been hurt is that space included within the railroad fences, and that the use by the public of the roadway outside of said fences and parallel with its track imposed no duty upon the operatives of trains of looking out for the safety of travelers along such roadway.

We think none of these assignments should be sustained. The jury were in effect instructed by the charge of the court that in order to find for the plaintiff they must believe from the evidence that appellant's employes operating the engine saw plaintiff at the time they caused the engine to throw out the steam and make the noise which frightened his horse; that such noise and the emission of steam from the cylinder cocks were unusual and unnecessary in the proper operation of the engine; that said employes were guilty of negligence in so operating the engine, and that such negligence was the proximate cause

of plaintiff's injuries. We think this charge was a correct application of the law to the facts of the case. It was not essential to plaintiff's right of recovery that defendant's employes should have seen his actual peril. If a reasonably prudent person would have anticipated that the opening of the cylinder cocks, thus causing volumes of steam to be thrown in the direction of plaintiff's horse accompanied by loud and unusual noise, would have frightened the horse and probably have caused plaintiff to be injured, such acts on the part of appellant's employes, being unnecessary in the proper operation of the engine, would constitute negligence and would render appellant liable for the injuries thereby caused. Railway v. Syfan, 43 S. W. Rep., 551; Railway v. Bellew, 62 S. W. Rep., 99; Railway v. Crook, 56 S. W. Rep., 1005; Railway v. Hamilton, 4 Texas Ct. Rep., 207.

The doctrine of discovered peril is generally applied in cases in which the injured person is himself guilty of such contributory negligence as would ordinarily prevent his recovery. If in such case the person causing the injury discovers the peril to which the other party is exposed and fails to use every reasonable means to prevent the injury, he will be held liable therefor, notwithstanding the contributory negligence of the injured party. Under the facts in this case it would have been clearly wrong for the court to have given the requested charge set out in the second assignment. If the acts of appellant's employes were not the acts of a reasonably prudent person acting under the same or similar circumstances, and appellee's injuries were the direct and proximate result of such acts, appellant would be liable therefor, regardless of whether or not said employes at the time actually saw the danger to which appellee was exposed by their negligence.

In the case made by the pleadings and evidence and submitted to the jury by the charge the question as to whether appellee was on appellant's right of way was immaterial, and therefore the trial court did not err in refusing to instruct the jury that appellee was not upon the right of way at the time he was injured, conceding for the sake of argument that such instruction, abstractly considered, was correct.

We deem it unnecessary to consider the remaining assignments of error in detail. It is sufficient to say that in our opinion none of them present any error which would authorize a reversal of the judgment of the court below. The several special charges requested by appellant in so far as any of them embody a correct statement of the law applicable to the facts of this case were unnecessary, because the court had correctly instructed the jury upon the issues therein presented in his main charge and was not required to repeat such instructions. The charge of the court contains no material error, and fully and fairly presents all of the material issues raised by the pleadings and evidence. As before stated, we are of opinion that the verdict of the jury is amply supported by the evidence. The judgment of the court below is affirmed.

*Affirmed.*