MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v.
Z. T. BELEW.

Decided March 13, 1901.

**1.—Railroads—Highway Parallel to Track—Lookout—Ordinary Care.**

Where a highway, established before the construction of the railroad, ran for a distance parallel with its track on the right of way and near the end of the ties, and had so continued with the consent of the railroad for more than ten years, it was the duty of the train engineer to keep a lookout at that point for the safety of persons traveling on the highway, and to use the means at hand to avoid injuring them, and for a failure to use ordinary care in this respect, the railway company would be liable. The ruling in this case on former appeal is adhered to. Railway v. Bellew, 22 Texas Civ. App., 254.

**2.—Appeal—Rule of Decision.**

Only in very exceptional cases should a Court of Civil Appeals overrule decisions previously made in the same case by another one of the Courts of Civil Appeals on a former appeal.

Appeal from Hunt. Tried below before Hon. L. A. Clark.

*T. S. Miller* and *Head, Dillard & Muse,* for appellant.

*Evans & Elder,* for appellee.

GILL, ASSOCIATE JUSTICE.—This is a suit by appellee against the appellant to recover damages for personal injuries alleged to have been sustained through the negligence of appellant. A trial by jury resulted in a verdict and judgment for appellee from which the railway company has appealed. The accident causing the injuries is alleged to have been due to the fright of appellee's horse caused by the negligence of appellant's servants in charge of its train.

Appellant answered by general denial, pleaded contributory negligence, the assumption of the risk by appellee, and that the accident was due to the bad disposition of the horse which appellee was driving.

The accident occurred in the following manner: The railway of the defendant runs practically north and south at the point where the accident occurred. Plaintiff approached it from the west. After the road reached the railway it turned northward parallel with it, running on a line with the railway between the railroad and a fence to the left for a distance of about a quarter of a mile when it turned again to the left. In the lane there was a crossing made by another road which approached the railway from the east. After the crossing was passed by this road the two united in the lane and went northward as indicated. In the lane along which plaintiff was traveling the road was for about two-thirds of the distance on the right of way, and at times it approached within eight or ten feet of the ends of the ties. Some distance before he reached the railway, plaintiff stopped his horse and looked and listened for an approaching train and saw and heard none. About the time

the public road got to the railroad he again looked and listened, and
then turned northward. He did not hear the train until it got very close
upon him, when he tapped up his horse, thinking he could make it
through the lane. He immediately realized that he could not do this,
and he started to check up. The horse was very much frightened, and
after a little began to run and kick and continued kicking at intervals
all through the lane. That it turned westward up the road leading
westward from the track, and after getting 100 yards or so from the
track kicked itself out of the harness and kicked him so as to throw him
out of the buggy and inflict upon him the injuries from which he suf-
fered. Plaintiff was not expecting to cross the railroad track, but in-
tended to turn westward from it when he got to the end of the lane
running parallel to it. No sound of the bell or whistle was given for
the crossing to which we have referred. The horse plaintiff was driving
was not his own, but he had taken him to drive for a relation of his who
lived in Van Zandt County. Plaintiff was ahead of the train when
he first noticed it about seventy-five yards. The lane all through was
open, and through it for some distance southward plaintiff might have
seen an approaching train, and there was nothing to obstruct the view
of plaintiff from those on the engine. Plaintiff only had such familiarity
with the road as could be acquired in traveling over it two or three
times.

The operatives of the train did not see plaintiff and his danger, but
could, by the exercise of ordinary care, have discovered it in time to
have checked the speed and noise of the train and thus have prevented
the accident. The fright of the horse and the consequent injuries to
appellee were due to the negligence of appellant, and appellee was not
guilty of contributory negligence.

Appellant contends that the law does not impose upon operatives of
railway trains the duty of looking out for the safety of travelers along
a highway near to and parallel with the track; that the duty to them
arises only when the fright of the horse and the danger to the driver is
discovered by them in time to avert the injury by resort to the means at
hand. Many cases are cited in support of this contention, and it appears
to be the general rule. But in this case the highway in question was
actually on the railroad right of way, and ran for a considerable dis-
tance in close proximity to the ends of the ties. This highway had been
so established prior to the construction of the railroad, and the com-
pany had not restored it to its former condition of safety and usefulness,
nor had it located further from its track. It was a place where the
company, in the very nature of things, must have expected to find trav-
elers, and its close proximity to the track rendered consequences such
as those under consideration probable.

On account of the grade at that point the engineer could easily have
reduced the speed of the train and lessened the noise of the engine. This
was not done, for the reason, as given by him, that he did not see either

plaintiff or the horse, and knew nothing of the accident until afterwards. As a matter of fact the train followed the frightened horse a considerable distance, gaining on him all the time, and just before the highway turned off the track began to "work steam," as the up-grade began at that point.

Under this state of facts the Court of Civil Appeals of the Second District, speaking through Chief Justice Conner, held that it was the duty of the engineer to keep a lookout for the safety of those on the highway, and a failure to exercise ordinary care in that respect would render the company liable for resultant injury. Railway v. Belew, 22 Texas, Civ. App., 264. That decision was rendered on a former appeal of this case, and the court below seems to have conducted the last trial in accordance with the views there expressed. We will not review the authorities cited by appellant, but on the authority of the decision supra we overrule the assignment presenting the question.

In Franklin v. Cassaday, 62 Texas, 421, it is held that only in exceptional cases will the Supreme Court overrule decisions previously made in the same case on a former appeal. We think this rule applies with peculiar force to the Courts of Civil Appeal under the present organization of our judiciary system. Should we, after a thorough review of the authorities, reach a conclusion different from that announced on the former appeal, it would necessitate a reversal of the judgment. The trial court at the next trial would be governed by our opinion. The next appeal would be to the Court of Civil Appeals of the Second District, and that court might adhere to their first conclusion. That course would result in another reversal, and thus the case would be tossed from one court to another and a final adjudication indefinitely postponed. It is true such questions might be certified to the Supreme Court, but such a course is not always effective or satisfactory. We are content, therefore, whatever conclusion we might otherwise have reached, to be controlled by the views announced on the former appeal.

We do not deem it necessary to consider the other assignments in detail. We are of opinion they present no reversible error.

For the reasons indicated the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING AND TO MODIFY OPINION.

The motion for rehearing has been considered, and we are of opinion it should be overruled. In disposing of it we do not deem it necessary to add anything to what was said by us in the main opinion.

We are requested to modify our finding that the highway in question had been established prior to the construction of the railway, and that the railway right of way included the highway so previously established. The fact as found was averred in the petition and was assumed as an established fact in appellee's brief. It appears inferentially from the

testimony, and the statement in appellee's brief was not controverted. Upon reconsideration we have reached the conclusion that the evidence is sufficient to sustain the finding, and our finding upon that issue is withdrawn.

The fact that at least a part of the highway was upon the right of way and that the traveled part was wholly on the right of way and near the ends of the ties along the portion of appellant's road in question is undisputed, as is also the fact that it had been so used by the traveling public for more than ten years with the consent and acquiescence of appellant. There was no issue upon this point, and the facts as found in the main opinion are in this respect undisturbed.

Writ of error refused.